IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : : | NO. 07-2919 |
| CAREMARKPCS HEALTH, L.P., | : : | |
| Defendant. | : : | |

MEMORANDUM AND OPINION

L. FELIPE RESTREPO  NOVEMBER 25, 2008
UNITED STATES MAGISTRATE JUDGE

     Before the Court is Defendant, CaremarkPCS Health, L.P.'s ("Caremark") Motion to Bar Plaintiff, Southeastern Pennsylvania Transportation Authority ("SEPTA") from introducing claims or evidence contained in Sections V (A), (D), and (F) of SEPTA's expert report; or, in the alternative, to require SEPTA to amend its First Amended Complaint, to extend discovery, and to order cost-shifting to allow Caremark more time to prepare to defend these claims.[1] See Def.'s Mot. 1, 16-17 (Doc. No. 93). Also before the Court is SEPTA's Opposition Brief (Doc. No. 97) to the aforementioned Motion to Bar, and Caremark's Reply Brief (Doc. No. 102). For the reasons stated below, Caremark's Motion to Bar is denied, its request that the Court require SEPTA to amend the First Amended Complaint is denied, its request to extend discovery is granted, and its request to shift the costs of additional discovery to SEPTA is denied.

---

[1] Specifically, the claims or evidence at issue in Sections V (A), (D), and (F) pertain to invalid prescriber identifications on claims, copayments, and specialty drug pricing. See Def.'s Mot. 1 (citing Ex. A, filed under seal).

## I. Procedural History

SEPTA and Caremark entered into a contract in January 2002 upon which Caremark agreed to provide "Prescription Drug Benefits" to SEPTA. Pl.'s Opp. Br. Ex. 1. By agreement the contract was extended for one year in 2004. Id. Ex. 2. SEPTA contends that the contract created the obligation for Caremark to "manage the pharmacies that would dispense prescriptions to SEPTA members and to adjudicate prescription claims pursuant to certain requirements set forth in the [c]ontract." See Pl.'s Opp. Br. 2. The contract contained, inter alia, provisions concerning copayments and specialty drug prices. See Pl.'s Opp. Br. Ex. 1 at SEPTA 010373-76, 010467 n. 1. In February 2005, SEPTA began requesting claims data in order to perform an audit of Caremark's compliance with the provisions as stated in the contract. Pl.'s Opp. Br. 2-3. Apparently, the parties engaged in approximately 16 months of discussions regarding the production of the data that was necessary to perform this audit. Id. at 3; Ex. 4.

SEPTA filed the current breach of contract action, through a praecipe to issue summons, in state court on January 26, 2007. Pl.'s Opp. Br. Ex. 7. Caremark removed the case to federal court on July 16, 2007. See Notice of Removal dated 7/16/07 (Doc. No. 1). Throughout this process, SEPTA unsuccessfully attempted to reach an agreement with Caremark to toll the statute of limitations while SEPTA performed an audit of Caremark's performance under the contract. Pl.'s Opp. Br. 3; Ex. 11. On September 17, 2007, SEPTA filed its First Amended Complaint (Doc. No. 39). Discovery was originally scheduled to close on May 30, 2008, see Sched. Order dated 2/14/08 (Doc. No. 77), but the schedule was extended to permit discovery until August 15, 2008 with rebuttals to expert reports to be submitted by September 22, 2008. Pl.'s Opp. Br. 4; see also Stip. for Re-Setting Case Mgmt. Sched. dated 7/21/08 (Doc. No. 87).

SEPTA filed a Motion seeking an extension of the deadline for submission of its expert report until August 29, 2008 and submitted its report on that day during the pendency of the Motion. Pl.'s Opp. Br. 5; Ex. 14. On that same day, August 29, 2008, Caremark filed a Response to SEPTA's Motion for an extension of time and sought "adjustments to the balance of the case schedule." See Def.'s Resp. 1 (Doc. No. 91). After an exchange of lengthy letters to this Court, a hearing was held on September 25, 2008, at which the Court heard argument concerning, amongst other things, the instant Motion to Bar (Doc. No. 93), which was filed on September 19, 2008.

## II. Discussion

Caremark claims in its Motion to Bar that SEPTA should not be permitted to introduce claims or evidence concerning invalid prescriber identifications, copayment compliance, and specialty drug pricing. See Def.'s Mot. 1. Caremark, citing Federal Rule of Civil Procedure 8(a), contends that all three of these "claims" are beyond the scope of the First Amended Complaint and fail to put Caremark on notice of the precise legal claims it must defend against. Id. at 6, 13, 15. In its First Amended Complaint, SEPTA alleges the following:

> 10. In breach of its contractual and fiduciary obligations, Caremark engaged in a wide-spread course of self-dealing by placing its own interests ahead of SEPTA's interests. Among other things upon information and belief:
>
>     a. Caremark failed to provide its contracted discount rates for brand-name drugs dispensed through Caremark's retail pharmacy networks;
>     b. Caremark failed to provide its contracted rates for generic drugs dispensed through Caremark's retail pharmacy networks;

3

  c. Caremark failed to provide the contracted rates for brand-name drugs dispensed through third-party mail order facilities;

  d. Caremark failed to provide the contracted rates for generic drugs dispensed through third-party mail order facilities;

  e. Caremark wrongfully created and retained pricing spreads on ingredient costs for prescription drugs dispensed through Caremark's retail pharmacy networks;

  f. Caremark wrongfully created and retained a spread on the retail pharmacy dispensing fees;

  g. Caremark used an inflated reporting source when setting the Average Wholesale Price ("AWP") and associated price that SEPTA paid for brand-name drugs;

  h. Caremark improperly charged SEPTA multiple claims administration fees for the same prescription;

  i. Caremark failed to disclose and pass on to SEPTA all rebates and related compensation Caremark received from drug manufacturers;

  j. Caremark improperly switched SEPTA members from low cost drugs to higher cost drugs;

  k. Caremark was hired by SEPTA to serve as its agent and/or consultant. In exercising discretion over SEPTA's money, Caremark decided what drugs to include on SEPTA's Plan formulary of drugs, negotiated the terms and methods of payment, switched plan Members to preferred drugs and accounted to SEPTA for all drug transactions. In violation of its obligations to SEPTA, Caremark entered into secret agreements with drug manufacturers and retail pharmacies and other third parties and accepted rebates, kickbacks and secret incentives for Caremark's own accounts;

  l. Caremark committed accounting and other administrative errors that often enriched Caremark at the expense of SEPTA[.][2]

First Am. Compl. ¶ 10. Caremark argues that the three "claims" at issue do not reasonably fall

---

[2] SEPTA agreed to strike subsection "m" from the First Amended Complaint by agreement on July 25, 2008. See Stip. to Strike ¶ 10(m) of Compl. dated 7/25/08 (Doc. No. 88).

within the ambit of the language in the First Amended Complaint, particularly paragraph 10(l), which SEPTA argues encompasses the first two "claims." Def.'s Mot. 7-8, 14; see also SEPTA's Letter Br. dated 9/3/08 at 4-5. Caremark further contends that, with regards to the specialty drug pricing claim, "Plaintiff [does not] claim that it relates to any actual allegation or claim set forth in the [First Amended Complaint], thereby conceding that this new claim is a blatant attempt to inject a new theory of recovery into the case after the close of discovery." Def.'s Mot. 15. Caremark characterizes SEPTA's conduct as "litigation by ambush." Id. at 2.

In response, SEPTA points out that Caremark responded to a request for its claims processing manual by arguing that the invalid prescriber identification claim was not properly pled in the First Amended Complaint. Pl.'s Opp. Br. 5-7. This Court required production of the claims processing manual without requiring amendment of the First Amended Complaint; and as such, SEPTA argues that Caremark cannot now claim surprise. Id. at 6-7. Further, SEPTA contends that Caremark agreed to allow the precise nature of the breach of contract action to be detailed through its expert report. Id. at 12-13; Ex. 26. SEPTA also points out that in a letter sent to Caremark on December 5, 2006, SEPTA notified Caremark that in order to complete its claims audit, it needed "specific data and related documents for audit, including: . . . [c]laims data . . . [s]pecialty [d]rug [l]ist/[h]ome [i]nfusion [l]ist . . . [and] Benefit Plan Sheets listing group/plan/benefit number, copays, fees, limitations and other information specific to groups or plans associated with the SEPTA contract." Id. at 15 (quoting Ex. 5 at 2-3) (emphasis omitted). SEPTA also emphasizes that its requests for documents and deposition questions dealt with prescriber identification numbers, copayments, and specialty drug prices. Id. at 16-19.

Caremark requests that the Court bar SEPTA from introducing evidence of or claims

regarding invalid prescriber identification, "copay differential, or Specialty Drug Pricing." See Def.'s Mot. 16. In the alternative, Caremark requests that the Court require SEPTA to amend its First Amended Complaint, extend discovery, and require SEPTA to pay costs of additional discovery. Id. at 17.

### A. Motion to Bar

It is initially noted that in Pennsylvania, a proper "cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (citing Gen. State Auth. v. Coleman Cable & Wire Co., 365 A.2d 1347, 1349 (Pa. Commw. Ct. 1976)). In its previous Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. No. 49), Caremark argued that SEPTA failed to meet this standard partly because it failed to "explicitly set forth any contractual provision or contractual duty that Caremark breached." Def.'s Br. Mot. Dismiss 3 (emphasis omitted). Judge Katz, in his order dated October 11, 2007, denied the Motion to Dismiss without prejudice. See Judge Katz's Order dated 10/11/07 (Doc. No. 51). As explained below, the outcome of Caremark's Motion to Bar will inevitably turn on whether or not evidence of invalid prescriber identification, copay differential, and specialty drug pricing are actually new claims, or rather itemized damages under the existing, sufficiently pled breach of contract action.

Caremark cites a number of cases in its Motion which explain the circumstances upon which a Court will deny leave to amend the Complaint. Def.'s Mot. 4-5. "Leave to amend will

be denied . . . where allowing the amendment would cause undue prejudice to the non-moving party, where the movant exhibits bad faith or ulterior motives, or where the amendment would be futile." Capp, Inc. v. Dickson/Unigage, Inc., 2004 WL 2188100, at *3 (E.D. Pa. Sept. 8, 2004) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). The most important factor that can lead to denial of leave to amend is "prejudice to the non-moving party." Capp, 2004 WL 2188100, at *3 (quoting Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993)). "As another court in this district has summarized, '[c]ourts have found undue prejudice to the non-moving party and denied leave to amend where the amendment would have asserted new claims, where new discovery would have been necessary, where the motion for leave was filed months after the factual basis of the amendment was discovered by the moving party, and where the motion for leave was brought after summary judgment motions were filed.'" Capp, 2004 WL 2188100, at *3 (quoting Cummings v. City of Phila., 2004 WL 906259, at *4 (E.D. Pa. Apr. 26, 2004)). Further, "the Third Circuit has emphasized that leave to amend will be denied where the amended complaint would raise new issues and require extensive factual investigation following the close of discovery." Capp, 2004 WL 218800, at *3 (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 923-24 (3d Cir. 1990)). When the legal and factual issues being disputed in the case would be "significantly alter[ed]," the Third Circuit has also found undue prejudice. Capp, 2004 WL 218800, at *4 (citing Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n, 573 F.2d 820, 824-25 (3d Cir. 1978)).

It is initially noted that leave to amend a complaint falls "within the sound discretion of the district court." Capp, 2004 WL 218800, at *3 (quoting Cornell, 573 F.2d at 823). More

7

importantly, SEPTA does not seek leave to amend its First Amended Complaint. Rather, SEPTA contends that amendment is not required because it is not asserting a new cause of action, but rather itemizing its damages. See Tr. Oral Arg. 11/5/08 at 18-19. Furthermore, many of the same factual and procedural scenarios present in the cases cited by Caremark are not present in the instant case. For example, in Capp, the original complaint sought two declaratory judgments under the Lanham Act and Plaintiff sought and was denied leave to amend to add two Sherman Act claims and two tort claims which arose from a distinct set of facts. Capp, 2004 WL 218800, at *1-3. Further, amendment was denied because it would have resulted in significant delay due to the fact that leave was sought "[o]n the eve of summary judgment briefing," discovery was closed, and there would have been too much additional discovery required. Capp, Inc., 2004 WL 2188100, at *4-5.

In SIG Swiss Ind. Co. v. Fres-Co Sys., USA, Inc., 1993 WL 232884 (E.D. Pa. June 24, 1993), the Plaintiff sought a declaratory judgment involving the invalidity and non-infringement of a patent and Defendant counterclaimed for patent infringement. Id. at *1-3. Plaintiff filed a Motion to amend the complaint to bring in a new Defendant, who was the parent company of the Defendant, a new antitrust claim, and a claim for fraud against the U.S. Patent Office. Id. at *1. Leave to amend was denied because the Plaintiff "unduly delayed" the commencement of the fraud claim since it was aware of some of the information at the beginning of the litigation and could have conducted discovery accordingly. Id. at *2. Amendment would have caused delay, additional discovery and expenses, and would have delayed Defendant's counterclaim. Id. Leave to amend to add the antitrust claim was denied because Plaintiff could have obtained the information necessary to bring the claim by "interviewing its own witness." Id. at *3. Leave to

add the additional Defendant was denied because it was based on information that Plaintiff could or should have known "at the beginning of th[e] case." Id.

Some Courts have denied leave to amend after summary judgment briefs have been filed. Saini v. Bloomsburg Univ. Faculty, et al., 826 F. Supp. 882, 884-85, 889 (M.D. Pa. 1993) (leave to amend denied after Defendants filed their Motion for Summary Judgment where instead of filing opposition to the Summary Judgment Motion, Plaintiff sought to amend the complaint without specifying his reasons and such amendment would have required additional discovery, dispositive motions, and a new trial date); see also Sabatini v. Reinstein, 2001 WL 872760, at *1-2, 3, 4 (E.D. Pa. July 10, 2001) (Plaintiff denied leave to amend to add new claims based on separate occurrences after the Court granted partial summary judgment; leave also denied because Plaintiff did not attach the proposed amended complaint, never mentioned that he would seek leave to amend at a conference where the trial date was decided, and because the amended complaint would have been futile). In the instant case, the Court's prior Scheduling Order (Doc. No. 87), which included the date for summary judgment motions to be filed, has been suspended. See Order dated 10/10/08 (Doc. No. 99); Order dated 7/21/08 at ¶ 3 (Doc. No. 87).

While SEPTA does not seek leave to amend, the aforementioned case law and tests for prejudice to the non-moving party provide meaningful guidance to the Court in deciding whether to allow SEPTA to introduce the contested damages evidence of its audit-based claims. Many of the concerns of the Courts listed above do not concern the Court in the instant case. SEPTA is not attempting to assert new legal claims based on different law or different facts and events. Rather, SEPTA identified in Paragraph 10(l) of its First Amended Complaint that Caremark committed accounting and auditing errors, and now seeks to clarify the precise nature of these

errors and itemize the damages through discovery and the performance of an audit by its expert. The legal claim has always been that Caremark allegedly breached the contract, and the cause of action has not been altered, it has been specified. There is no evidence that SEPTA should have known more detail about its specific damages from the outset.[3] SEPTA has repeatedly asserted that it needed to perform the audit in order to better specify the precise nature of the audit-based claims; indeed, reading the submissions of both parties demonstrates that there has been extensive negotiation and resistance on the part of both parties as to what information would be released to their respective opponents. See Pl.'s Opp. Br. Ex. 27 at 6-7; Def.'s Mot. Ex. D at 5-7.

In addition, the parties have not yet filed motions for summary judgment. The parties are at odds over how much additional discovery is necessary to prepare their claims, defenses, and to account for the evidence at issue; for instance, Caremark argues that "extensive factual investigation" is required, while SEPTA asserted at Oral Argument that it has provided all

---

[3]Caremark's argument that SEPTA should have known about these "claims" in December 2006 when the data was first produced to SEPTA to perform an audit, see Def.'s Reply Br. 6-8, is rejected. Caremark also argues that since SEPTA's expert's task log, filed under seal, indicates that SEPTA had a draft of the expert report in March 2008, they should have notified Caremark of the precise nature of their claims at that point. Def.'s Reply Br. 5, n. 3 (citing Ex. C, at MHA 00045). It is impossible to discern at this time what information may or may not have been contained in the draft report (or what findings were finalized), and thus the mere fact that a draft report existed cannot serve as the basis for granting the Motion to Bar for untimeliness or bad faith. Conversely, SEPTA's arguments that Caremark should have known that these specific damages would be sought based on its expert's website and the simple fact that Caremark is familiar with these types of audits is also rejected. See Pl.'s Opp. Br. 14, 19-20; see also Tr. Oral Arg. 11/5/08 at 40-41. Just as SEPTA cannot be expected to have known the precise types of damages before the audit was completed, Caremark cannot be expected to anticipate the precise nature of damages, if any, without the benefit of the audit. Likewise, SEPTA's argument that Caremark agreed to be notified of the precise nature of the contract claims at the close of discovery is unfounded. See Pl.'s Opp. Br. 12-14. The only matter that Caremark agreed to was a revised scheduling order which did not cover any substantive matters in the litigation. See Stip. for Re-Setting Case Mgmt. Sched. dated 7/21/08 (Doc. No. 87).

relevant documents to Caremark and that only a limited amount of additional depositions would need to be conducted.  See Def.'s Mot. 5; Tr. Oral Arg. 9/25/08 at 78-81.  As previously noted, the Court's prior Scheduling Order (Doc. No. 87) has been suspended pending the outcome of this Motion.  See Order dated 10/10/08 (Doc. No. 99).  This litigation is at a point where discovery can be extended to allow for any additional depositions or limited fact discovery that is necessary while still allowing time for the parties to move for summary judgment and prepare for trial.  Simply stated, the unique factual and procedural posture of this case diminish any argument of prejudice or untimeliness.  Throughout this case, discovery requests and deadlines have been heavily litigated, which has ultimately delayed discovery; therefore, the Court is not faced with a situation in which one party blindly stands by while the other causes delays without justification.[4]  Finally, despite the fact that Caremark has repeatedly alleged that SEPTA is engaging in a course of gamesmanship, in which they have violated discovery rules and "take[n] one-sided discovery" in order to gain a tactical advantage, see Def.'s Mot. 2, 10-11; Def.'s Reply Br. 3-6, the Court finds that SEPTA has not acted in bad faith.

Caremark also cites a line of cases where Courts have not allowed new theories of liability to proceed because of untimeliness.  Def.'s Mot. 8-9, 12-14.  "District Courts have broad discretion to disallow the addition of new theories of liability at the eleventh hour."  Carr v. Gillis Assoc. Indus., Inc., 227 Fed. Appx. 172, 176 (3d Cir. 2007) (citing Speziale v. Bethlehem Area Sch. Dist., 266 F. Supp.2d 366, 371 n.3 (E.D. Pa. 2003); OTA P'ship v. Forcenergy, Inc.,

---

[4]For instance, SEPTA argues that its audit was delayed because Caremark originally refused to produce "pharmacy remittance data."  See Pl.'s Opp. Br. 10, 10 n.3, 11.  In response, Caremark argues that the pharmacy remittance data had nothing to do with the evidence at issue in the Motion to Bar and any delay in production did not preclude SEPTA from proceeding with those matters.  Def.'s Reply Br. 6-7 n. 5.

237 F. Supp.2d 558, 561 n.3 (E.D. Pa. 2002)).  Once again, the different factual and procedural scenarios presented in these cases render them distinguishable from the present case.

The Plaintiff in Carr was injured at work using a ladder manufactured by Defendant that his expert claimed had defectively designed rubber tips and a defective warning.  Carr, 227 Fed. Appx. at 173-74.  Defendant's expert claimed that "the ladder, as originally manufactured and sold, did in fact" have properly designed rubber tips and that the ladder involved in the accident had replacement tips that Defendant never authorized for safe use.  Id. at 174.  Plaintiff's expert then filed an addendum report and stated that in addition to the items in his first report, the ladder lacked adequate warning of which types of replacement parts should be used.  Id.  The district court only considered the original two reports at the summary judgment stage, "[finding] that the change in theory was untimely, made two months after [Plaintiff]'s original expert report was due, and that [Plaintiff]'s expert should have known that the rubber tips on the ladder were replacements at the time of his original report," and the Third Circuit affirmed.  Id. at 174, 176.

The present case is distinguishable in two respects.  First, SEPTA is not attempting to introduce a new theory of liability; rather, it is itemizing damages under the breach of contract claim.  Second, there has been no showing that the itemized damages arising from the breach of the contract between SEPTA and Defendant were known to SEPTA before its expert completed the audit.  SEPTA's counsel stated at oral argument that it would not seek to expand upon any claims for damages or theories of liability that are not within the four corners of its expert report.  See Tr. Oral Arg. 10/2/08 at 95-96.  Finally, as noted above, this litigation has not yet reached the summary judgment stage, which weakens any argument of untimeliness.

Caremark also argues that in Armbruster v. Unisys Corp., 1996 WL 55659, at *3-4 (E.D.

Pa. Feb. 7, 1996), the Court "reject[ed] [P]laintiff's effort to inject a new claim at the eleventh hour by asserting that it fell within the broad allegations of [the] complaint." Def.'s Mot. 8-9 (citing Armbruster, 1996 WL 55659, at *3-4).  However, a close reading of Armbruster reveals that at the heart of the Court's holding was the requirement that in an employment discrimination claim alleging disparate impact, the Plaintiff must plead "a specific employment practice of the [D]efendant" which caused the alleged impact.  Armbruster, 1996 WL 55659, at *3 (quoting Josey v. John Hollingsworth Corp., 996 F.2d 632, 642 (3d Cir. 1994)).  On remand to the District Court, the Court held that after pleading only disparate treatment, it was improper for Plaintiffs to raise a disparate impact argument in their appellate brief and then after the close of discovery on remand  and granted partial summary judgment.  Id. at *1, *3-4.  Plaintiffs had not yet sought leave to amend the complaint after conducting additional discovery for almost one year after remand, but indicated in a proposed joint pre-trial order that they would do so if summary judgment were denied.  Id. at *3.  As such, the Court considered the request to amend concurrently.  Id.  The Court reasoned that summary judgment in favor of Defendant was proper "[b]ecause the trial preparation to defend against a disparate impact claim is distinct from that necessary to defend against a disparate treatment claim, and because re-opening discovery on the eve of trial will cause undue prejudice to [Defendant] and undue delay in a case that has been in the court system for more than four years . . . ." Id. at *4.

      Caremark is not faced with the same danger of undue prejudice.  Allowing SEPTA's evidence to be admitted at trial will not require Caremark to defend against a new and legally distinct cause of action with a different burden of proof .  Caremark will be permitted additional time to prepare any necessary defenses.  Moreover, the procedural posture and timing of the

present case is completely different from Armbruster in that SEPTA has not failed to raise these damages issues until an appeal or after one year of discovery on remand.  Finally, the pleading requirements for breach of contract actions and employment discrimination actions are obviously completely distinct, and the Court's holding in Armbruster finding prejudice to Defendants was clearly dependent upon Josey's special pleading requirement for disparate impact claims.  See Armbruster, 1996 WL 55659, at *3 (quoting Josey, 996 F.2d at 642); compare Cutillo, 723 A.2d at 1058 (discussing the elements of a properly pled breach of contract claim).

Caremark also argues that, in its view, SEPTA has failed to "properly respond to Caremark[]'s interrogatories at its own peril," and that for this reason, its new theory of liability must be barred.[5]  Def.'s Reply Br. 16-17.  Caremark's reliance on Loral Fairchild Corp. v. Victor Co. of Japan, Ltd., et al., 911 F. Supp.76, 80 (E.D.N.Y. 1996) broadly interprets the case and fails to account for some key distinguishing factors.  Def.'s Reply Br. 17 (citing Loral, 911 F. Supp. at 80).  For instance, in Loral, the Court barred the Plaintiff from asserting a new theory of liability in a patent infringement case after "pursu[ing] a single theory of liability for nearly four years" and failing to respond to discovery requests.  Loral, 911 F. Supp. at 77, 80.  Additionally, the Court barred the new theory of liability because "[d]iscovery [was] closed and motions for a summary judgment ha[d] been decided."  Id.  at 80.

---

[5]For example, in one instance, Caremark served SEPTA with an interrogatory seeking the factual basis for its contentions that are stated in Paragraph 10 of the First Amended Complaint, and SEPTA responded that its expert's report would reveal the factual basis for the claims.  See Pl.'s Opp. Br. Ex. 27 at 6-7.  Caremark argues that rather than clarifying the factual basis for the claims in the First Amended Complaint, SEPTA's expert's report introduced entirely new claims. Def.'s Reply Br. 17-18.  The Court finds that the evidence at issue in the instant Motion to Bar does not constitute new claims.  As such, SEPTA's interrogatory responses do not rise to the level a discovery violation that would support granting the Motion to Bar.

As previously stated, the present litigation has not yet reached the summary judgment stage and the close of discovery has been suspended pending the outcome of this motion.  More importantly, a comprehensive reading of Loral reveals that a major factor that rendered Plaintiff's attempt to belatedly change theories of liability more egregious was the fact that trial courts are required to "determine as questions of law the meaning of patent claims." Id. at 79 (citing Markman v. Westview Instr., Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc)).  The Loral Court "interpreted [Plaintiff's] claim [] more narrowly than [Plaintiff] had advocated," and then Plaintiff sought to "change[] its theory of liability," which the Court did not allow for the reasons stated above. Id. at 79-80.  Once again, the precise nature of the legal claims at issue renders Loral distinguishable from the present case and Caremark's reliance on the case unpersuasive.

Finally, the Court is not persuaded by Caremark's reliance on Minn. Chippewa Tribe v. U.S., 11 Cl. Ct. 534 (Cl. Ct. 1987) nor Carita v. Kandianis, 1994 WL 583213 (E.D. Pa. Oct. 20, 1994), aff'd, 65 F.3d 161 (3d Cir. 1995).  In Minn. Chippewa Tribe, the Court held that general "catchall" language in a request for an accounting was insufficient notice to Defendants of a claim alleging that "[D]efendant deliberately allotted pine lands instead of agricultural land on the White Earth Reservation so that lumber companies could gain easy access to vast amounts of timber at low prices." Minn. Chippewa Tribe, 11 Cl. Ct. at 538, 540.  The Court held that to allow "relation back" in this circumstance would allow claims arising out of "almost every matter growing out of the hundred year long relationships of the parties." Id. at 539.  Furthermore, the Court noted that relation back "would be utterly unworkable in this thirty-five year old litigation," especially "[g]iven the breadth of the parties' dealing over a one-hundred year period and the admitted existence of certain irreducible circumstances common to all those

15

dealings." Id.

In Kandianis, Plaintiff's Motion for a new trial was denied in a § 1983 claim alleging excessive force where Plaintiff claimed, among other things, that he was prejudiced because his counsel was not permitted to argue in closing that it could have been a knee that injured him. Kandianis, 1994 WL 583213, at *1, *4-6, *11. The Court noted that this theory was not raised in discovery nor at trial; further, Plaintiff said in his deposition testimony it could not have been a knee. Id. at *4-5. The court held that "there was no amendment of the pleadings by implied consent of the parties," because "[a]t the close of all the evidence, the only issue before the court was whether [Defendant] kicked [Plaintiff]." Id. at *6.

Caremark is not faced with a situation similar to either of the above-mentioned cases. There has been no century-long course of dealing between the parties and the litigation has not lasted for over thirty years. The same dangers of allowing any specific claim to arise from a general catchall "accounting" that were present in the factual context of the over three decade long Minn. Chippewa Tribe litigation are not present here. Caremark will be granted sufficient time to prepare for trial. Similarly, the Court is not faced with a theory of liability that has not been raised in discovery or at trial by way of a closing argument.

Invalid prescriber identification numbers, copayment compliance, and specialty drug prices have been the subject of discovery, and there are facts which undermine any argument of undue prejudice or surprise. SEPTA requested data and documents from Caremark regarding "[c]laims data - in NCPD Tape Version 2.0 or newer," "[s]pecialty [d]rug [l]ist/[h]ome [i]nfusion [l]ist," and "Benefit Plan Sheets listing group/plan/benefit number, copays, fees, limitations and other information specific to groups or plans associated with the SEPTA

16

contract" in its initial request to perform an audit on December 5, 2006.  Pl.'s Opp. Br. 15, Ex. 5 at 2-3 (emphasis omitted).  Further, SEPTA notes that in one of its requests for documents dated October 19, 2007, it defined a request for "Electronic Claims Data File" to signify "the standard set of data or information retained by Caremark . . . for claims adjudication . . ., which includes . . . for each prescription, adjudication, and/or claim: . . . (x) the Amount Paid to the Pharmacy, including Ingredient Cost, Co-Payment, Tax, Dispensing Fee, and Administrative Fee . . . [and] (xiii) the prescribing Physician."  Pl.'s Opp. Br. 16-17, Ex. 30 at Definitions and Instructions P (emphasis omitted).

The above facts indicate that Caremark was not completely surprised with claims regarding invalid prescriber identifications, copayment compliance, and specialty drug prices, because these topics were in fact the subject of discovery.[6]  Since it is within the Court's discretion whether to "disallow . . . new theories of liability at the eleventh hour," see Carr, 227 Fed. Appx. at 176 (citing Speziale, 266 F. Supp.2d at 371 n.3; OTA P'ship, 237 F. Supp.2d at 561 n.3), and because the Court finds that the aforementioned evidence is not a new cause of action, but rather evidence of itemized damages under the existing breach of contract claim, the

---

[6]In this regard, Caremark relies on Gant v. Klenzade, Inc., 155 F.R.D. 102 (E.D. Pa. 1994), to support the proposition that the mere fact that the data at issue were mentioned in discovery requests did not put them on notice.  Def.'s Reply Br. 19-20 (citing Gant, 155 F.R.D. at 102).  Caremark notes that many other standard data fields were requested in conjunction with the prescriber identification, copay compliance, and specialty drug pricing data.  Id.  In Gant, the Defendant's Motion to preclude fact witnesses was granted because Plaintiff's counsel could have discovered their identities sooner by merely interviewing his own client before his deposition; in addition, the Plaintiff failed to respond to Defendant's interrogatories and argued unsuccessfully that the presence of the witnesses' names in other discovery materials put the Defendant on sufficient notice that they would be called as witnesses.  Gant, 155 F.R.D. at 103-104.  The Court is mindful of the expansive amount of data requested by SEPTA to perform the audit.  The fact that some of the data at issue in the present Motion were the subject of discovery merely undermines an argument of complete surprise.

Court will exercise its discretion to deny Caremark's Motion to Bar and will allow SEPTA to introduce evidence of its itemized audit-based contract damages concerning invalid prescriber identifications, copayment compliance, and specialty drug prices. Moreover, because SEPTA is not seeking to assert a new, legally distinct cause of action, amendment of the First Amended Complaint is unnecessary.

### B. ALTERNATIVE REMEDIES

Caremark requests that if the Court denies its Motion to Bar, it should require SEPTA to move for leave to amend its First Amended Complaint; in addition, Caremark seeks delay of the trial date, an extension of time to conduct additional discovery, and the shifting of the cost of additional discovery to SEPTA. Def.'s Mot. 17. SEPTA argues that any additional discovery should be limited to the topics at issue in the present Motion and also requests permission to take additional discovery on these matters. Pl.'s Opp. Br. 21. SEPTA further contends that cost-shifting is unwarranted. Id. at 21-22. In its Reply Brief, Caremark requests that SEPTA be prohibited from taking additional discovery and that Caremark be permitted "sufficient time to assert counter claims and third party claims and add new third parties as necessary." Def.'s Reply Br. 30.

The Court is mindful that Caremark was not formally notified of the precise damages sought by SEPTA until the end of the previous discovery deadline. Even though SEPTA is permitted to seek these damages, the Court will exercise its discretion, in the interest of fairness, to allow Caremark additional discovery to prepare its defenses. Discovery will be limited to invalid prescriber identification, copay compliance, specialty drug pricing, and any necessary

third party issues.  **SEPTA, on the other hand, will not be entitled to additional discovery.** At the second oral argument, counsel for SEPTA indicated a desire to depose some witnesses in limited areas.  See Tr. Oral Arg. 11/5/08 at 47-48.  However, SEPTA's counsel noted that its case would likely consist of only a few witnesses and its expert.  Id. at 63.  Since SEPTA's expert report has already been completed, the Court finds that SEPTA is not entitled to additional discovery.

    Caremark cites two cases to support its contention that cost-shifting is appropriate.  See Def.'s Reply Br. 27-28 (citing McDevitt v. Pa. Dept. of Corr., 2007 WL 128007, at *4-5 (W.D. Pa. Jan. 11, 2007); Brennan v. Arkay Indus., Inc., 164 F.R.D. 464, 468 (S.D. Ohio 1996)).  In both cases, the respective Courts were faced with parties that were seeking to belatedly amend pleadings after having been on notice of the underlying bases for the claims for some time; as such, both Courts required the amending party to bear the cost of additional discovery. McDevitt, 2007 WL 128007, at *4-5; Brennan, 164 F.R.D. at 467.  As stated above, SEPTA does not seek to amend its First Amended Complaint and the Court will not require it to do so. Furthermore, Caremark has not offered sufficient evidence to prove that SEPTA knew of the nature of the contested damages before they were disclosed.  Therefore, neither of the two main justifications for ordering cost-shifting in the aforementioned cases apply.  For these reasons, Caremark's request to shift the costs of additional discovery to SEPTA is denied.

### C. Conclusion

Because the Court finds that SEPTA's evidence of invalid prescriber identification, copay compliance, and specialty drug pricing are itemizations of contract damages rather than new,

distinct causes of action, Caremark's Motion to Bar evidence of new "claims" is denied. Furthermore, the Court will not require SEPTA to amend its First Amended Complaint. However, in the interest of fairness, the Court will permit Caremark to take additional discovery concerning these limited topics and any necessary third-party inquiries. SEPTA is not permitted to take additional discovery. Finally, Caremark's request that SEPTA be ordered to pay the costs of its additional discovery is denied. An appropriate order follows.